HUGH F. REILLY, VESS ORAM, JOHN H. CUTSHALL, M. F. WARD, SAM DRUMMOND and JAMES. W. ORAM, Appellants, v. SUGAR CREEK TOWNSHIP of HARRISON COUNTY, CHARLES O. HAGERTY, Trustee of Sugar Creek Township, and ANDERSON FOSTER and BUCK TERRY, Members of the Sugar Creek Township Board, THE FARMERS BANK, a Corporation, and W. P. CHAMBERS, Circuit Clerk of Harrison County.—139 S. W. (2d) 525.

Division Two, May 4, 1940.

*Hugh F. Reilly, Jr.,* and *Lancie L. Watts* for appellants.

*Charles A. Miller, George R. Miller* and *Henry Gannan* for respondents.

WESTHUES, C.—Appellant Reilly and others, as resident tax-payers of Sugar Creek township, Harrison county, Missouri, filed this suit seeking to enjoin the officers of said township, The Farmers Bank and the Circuit Clerk of the county from paying an award of $1425 to property owners in a condemnation proceeding. The defendants, respondents here, joined in a demurrer which was sustained, and a judgment was entered dismissing plaintiffs' petition. An appeal was duly perfected.

A township being a party to the suit vests this court with appellate jurisdiction. Sherlock v. Duck Creek Township, 338 Mo. 866, 92 S. W. (2d) 675. The substance of the petition, as stated in the brief of appellants, reads as follows:

"1 Agreement for the selection of State Highway. On February 28, 1935, the County Highway Commission of Harrison County entered into a written contract with the State Highway Commission by the terms of hich a method as provided for the selection of Supplementary State Highway H from the Grundy County line to Route K. This agreement also provided that the County Highway Commission should secure, or cause to be secured, the necessary rights-of-way for this Supplementary State Highway.

"2. County Court orders bond election. On October 19, 1936, the County Court of Harrison County ordered a special election in Sugar Creek Township to be held November 20, 1936, for the purpose of voting $9000 in bonds for the construction of a road on the same road as established by the State Highway Commission for state road designated as State Road H (note that at the time this order was entered, as well as at the time set for the election, the rights-of-way had not been obtained).

"3. Election on Bond Issues. On November 20, 1936, the election was held, and the proposal 'to construct and gravel or rock a road', designated as State Road H, was carried.

"4. Issuance and sale of bonds. Thereafter the bonds were duly issued, sold and the proceeds placed on deposit in the Farmers Bank at Gilman City to be expended for the purposes for which they were voted by the citizens of Sugar Creek Township.

"5. Failure to obtain rights-of-way. By this time it was discovered that certain landowners, across whose lands the proposed highway was to be constructed, refused to give or sell a right-of-way across their respective properties.

"6. Condemnation. On July 30, 1937, the State Highway Commission filed a suit to condemn certain lands for the highway in question and such proceedings were had thereunder that an award was made to the property owners totalling $1425.

"7. Payments from proceeds of bond money. On October 18, 1937, three days after the award was made, the Township Trustees paid into the Circuit Clerk the sum of $1425 to be paid over to the

landowners.as compensation for their lands condemned by the State Highway Commission.

"8. Filing of Injunction Suit. On November 18, 1937, this action was instituted to enjoin the Circuit Clerk from disbursing this $1425 and to prevent the Township Trustees from unlawfully diverting other and additional funds from the proceeds of this bond issue."

The question for decision was correctly stated in appellants' brief as follows:

"Where a township votes for the purpose of 'constructing' a supplementary highway, are the Township Trustees authorized to pay from the proceeds of said bonds damages awarded to landowners for the rights-of-way condemned for such road?"

■ The authority of a township to raise funds through a bond issue, as authorized by article 5, chapter 42, R. S. Mo. 1929, Mo. Stat. Ann., page 6786, was not questioned. Section 7963 of that article provides that the proceeds derived from the sale of bonds shall be disbursed in paying the costs of constructing or improving roads in such township, including bridges and culverts. A grant of authority to a township to issue bonds for the purpose of raising funds to pay for the construction of roads, necessarily carries with it the authority to pay for rights-of-way upon which to build the roads. If such were not the case the authority to construct roads would be an empty and useless power. This court, in State ex rel. Wahl v. Speer, 284 Mo. 45, l. c. 62, 223 S. W. 655, held that the authority, conferred upon a county by our Constitution, to become indebted for the purpose of building a courthouse, jail, etc., carried with it the authority to use the money for the purpose of acquiring a site upon which to erect the buildings. In the course of the opinion the court said:

"The rule for interpreting statutes, that a power given carries with it, incidentally or by implication, powers not expressed but necessary to render effective the one that is expressed, would require the construction that authority to incur a debt for the erection of a public building, impliedly embraces authority to buy a site for it; and this for the plain reason that without a site the building cannot be erected."

That rule is applicable to the present situation. Note that the voters approved a bond issue to raise funds to construct a road from the Grundy County line to route "K." All of the right-of-way had not been acquired at that time. How could this road be constructed unless the proper route was acquired either by purchase or condemnation?

■ Appellants, however, contend that even if the township had the authority to purchase land upon which to construct a township road, it did not have authority to pay for land condemned by the state highway department for the purpose of building a state highway. The proposed road in this case was to be constructed as a supplemen-

tary state highway. The constitutional amendment of 1928 provides that the county highway commission shall have a voice in the location of these roads. [State ex rel. v. Huff, 330 Mo. 939, 51 S. W. (2d) 40; Laws of 1927, page 421, now article 2, chapter 42, R. S. Mo. 1929, Mo. Stat. Ann., page 6724.] Section 8131, R. S. Mo. 1929, Mo. Stat. Ann., page 6928, provides as follows:

"Any civil subdivision as defined in this article shall have the power, right and authority, through its proper officers, to contribute out of funds available for road purposes all or a part of the funds necessary for the purchase of rights-of-way for state highways, and convey such rights-of-way, or any other land, to the state of Missouri to be placed under the supervision, management and control of the state highway commission for the construction and maintenance thereupon of state highways and bridges. Funds may be raised for the purpose of this article in such manner and such amounts as may be provided by law for other road purposes in such civil subdivision."

Respondents reply upon the provisions of the above section for authority to pay for the right-of-way located in respondent township and condemned by the state highway department. Section 8131 was enacted in the year 1929, and was made a part and parcel of the law governing the state highway department. This department was created by the legislature in the year 1921. [See Laws 1921, Extra. Session, page 131, etc., now article 12, chapter 42, R. S. Mo. 1929, Mo. Stat. Ann., page 6885.] The act of 1921 in no way curtailed the right of a township to raise funds for the purpose of constructing roads within the township. The primary purpose of the 1921 act was to establish and construct a uniform state highway system. The act in a general way designated the location of these highways. [See section 8120, R. S. Mo. 1929, Mo. Stat. Ann., page 6903.] In the year 1927, the legislature enacted a law providing for a county highway commission in each county. The county commission was to lay out, construct and maintain, with the approval of the state highway commission, "farm to market roads" not to exceed one hundred miles. In 1928, the voters of Missouri adopted an amendment to the constitution whereby the sum of $75,000,000 in bonds was voted for road purposes. This amendment expressly authorized the construction of supplementary state highways in each county of the state in addition to the state highways designated in the act of 1921. [See sec. 44a, article 4, Missouri Constitution; State ex rel. v. Huff, supra.] After the above amendment to the constitution, the legislature enacted section 8131, supra. [See Laws of 1929, page 226.] By the constitutional amendment the state highway commission was granted a voice in the location of the roads and was given the power to ". . . determine the width of the right-of-way and surface, and the type and character of construction, improvement, and maintenance." The purpose of these provisions in the constitution was not only to establish a uniform system as to width,

etc., but also to insure continuous roads from one county to another. These supplementary roads are therefore under the supervision of the highway department and are termed state highways. In this undertaking the State lifted a heavy burden from the local communities, such as counties, townships and road districts. It is evident, however, that neither the act of 1921, or the constitutional amendment of 1928, restricted the authority of the State subdivisions to raise funds for road purposes. On the contrary the Legislature in 1929, by the enactment of section 8131, supra, expressly authorized the local subdivisions to pay for rights-of-way. This, not without good reason, because these supplementary roads are primarily for local use. The local communities were given a voice in the location of these roads. As noted above, the act of 1927 authorized the construction of "farm to market roads." The "farm to market roads" mentioned in that act are, as a matter of fact, now being built as supplementary state highways under the constitutional amendment of 1928.

Appellants next argue that even if a township possesses the authority to pay for a right-of-way when purchased, as expressed in section 8131, that does not authorize the paying of damages in a condemnation proceeding instituted by the state highway department. It is urged that a township does not have authority to condemn, and therefore no right to pay for a roadway condemned by the State. That does not necessarily follow. In fact a reading of the law creating the state highway system, particularly section 8131, convinces us that the Legislature intended the local subdivisions, such as counties and townships, to aid in constructing these highways by furnishing and paying for the rights-of-way. If a township may pay for a right-of-way when purchased, it must necessarily follow that it also has that right when condemnation proceedings are necessary, even though a township does not have the right to condemn. In a vast majority of cases these condemnation proceedings are only necessary when the owner of the land refuses to accept the price offered for the land. It then becomes a proceeding to determine the price to be paid for the land. For cases upon this point see, City of St. Joseph v. Hamilton, 43 Mo. 282, l. c. 289; Beeland Wholesale Co. v. Kaufman, 174 So. 516, l. c. 520 (2), 234 Ala. 249. In City of St. Louis v. Dietering, 27 S. W. (2d) 711, l. c. 714, the St. Louis Court of Appeals said:

"A proceeding in condemnation, ordinarily, is one to fix the price at which the party condemning can take the property sought (Lewis on Eminent Domain (3 Ed.), par. 955)."

[See also 20 C. J. 515, 516.] In State ex rel. v. State Highway Commission, 337 Mo. 878, 86 S. W. (2d) 1066, this court en banc held that a county had the authority to pay for a right-of-way to be taken over by the state highway department. The county had agreed to pay for this right-of-way in consideration of the State taking over

the road as a state highway. The case before us is somewhat similar. In this case the local communities in Harrison county and Sugar Creek township in particular are getting the benefit of having the state aid in constructing a roadway, which, when completed, will be a part of the state highway system and maintained by the State. If the road were built as a "farm to market road," as authorized by the 1927 act, supra, the entire burden of constructing the road as well as paying for the right-of-way would have to be borne by the local communities. The 1927 act also provided that condemnation, when necessary, be in the name of the county highway commission. [See section 7859, R. S. Mo. 1929 (Mo. Stat. Ann., page 6751).] Can it be successfully argued that in such a case a township would not be authorized to pay for land condemned by the county highway commission? If not, the road could not be built by the township and its authority to construct a road would be useless. The power of eminent domain and of locating the roads was left to the county highway commission and the state highway commission for the evident purpose of maintaining a uniform system. The law of 1927 provides a method whereby a "farm to market road" may be taken over by the State. In this case the State agreed to construct a supplementary state highway on condition that the local authorities furnish a right-of-way. Thus the local community would receive the benefit of having the State construct the road. Such a procedure is authorized. This court en banc so ruled in State ex rel. v. State Highway Commission, 337 Mo. 878, 86 S. W. (2d) 1066, l. c. 1068 (3), supra. It must be noted, however, that section 8131, supra, which expressly authorizes a township and other civil subdivisions to contribute funds, *available for road purposes,* for the purchase of rights-of-way for state highways, was not considered by this court in the cases of State ex rel. v. State Highway Commission, 337 Mo. 878, 86 S. W. (2d) 1066; State ex rel. v. Huff et al., 330 Mo. 939, 51 S. W. (2d) 40. We rule that Sugar Creek township was authorized to pay for the right-of-way out of the funds voted for the purpose of constructing roads.

The judgment is affirmed. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All concur.