Dear Senator Doctorian:
This is in response to your request for an opinion which reads as follows:
 "Whether a public housing authority in Missouri or a municipality, which is empowered to act as a public housing authority under 24 C.F.R. Sec. 811, is empowered to authorize or utilize a nonprofit corporation as its agent or instrumentality to act on its behalf in the issuance of tax exempt obligations, the proceeds of which would be applied to the construction of housing to be owned either by the public housing authority, a not-for-profit housing authority agent or private profit motivated owner for low income families under the Housing Authorities Law, R.S.MO. 99.010 et seq.
 "Could the public housing authority or municipality act in the capacity of the `parent entity' for the purpose of designating a Missouri not-for-profit corporation as a public agency within the meaning of Section 3(6) of the United States Housing Act of 1937, as amended, and HUD Reg. 24 C.F.R., Section 811, Subpart A, in order to act as an instrumentality of the city's incorporated public housing authority for the purpose of providing mortgage financing for FHA insured multi-family housing projects for low income persons and wholly subsidized by HUD under the provisions of Section 8 of the USHA of 1937, as amended."
Your question requires a parenthetical summary of regulations promulgated by the United States Department of Housing and Urban Development (hereinafter HUD). 24 C.F.R. § 811 outlines requirements which, if met, allow bonds issued by a qualified entity for the purpose of financing low income housing projects to assume tax exempt status. One such qualified entity is a not-for-profit corporation which has been properly designated by a qualified public housing authority — deemed by the regulation a "parent entity" — as its agency or instrumentality in the issuance of obligations. Under the regulation cited, the "parent entity" must approve the articles of incorporation and bylaws of the not-for-profit corporation. The "parent entity" must also approve the project to be financed, project expenditures, and the issuance of the bonds by the not-for-profit corporation.
It is our understanding that the application to HUD for approval of the agency or instrumentality — as you suggest, a not-for-profit corporation — must identify the "parent entity," establish that the separate entity has been properly designated or created as the agency or instrumentality of the "parent entity," and that such creation or designation is not prohibited by state law.
Of course, the above summary of the cited HUD regulation is intended to act only as further clarification of your question. We will not, nor do we intend herein to interpret any federal laws or proposed federal laws which may be applicable to the question you have posed.
Sections 99.010 to 99.230, RSMo 1978, comprise the "Housing Authorities Law" of Missouri. In creating municipal corporations in each city (as defined in Section 99.020) and county to act as a housing authority for that city or county, the General Assembly stated that its purpose was the relief of a shortage of safe and sanitary dwellings for persons of low income, the clearance of slums, public safety, public health, and the prevention of crime. Section99.030. See also Bader Realty Investment Co. v. St. Louis HousingAuthority, 217 S.W.2d 489, 493 (Mo.Banc 1949).
Under Section 99.080, each housing authority is granted broad powers to effectuate the purposes of the Housing Authorities Law.
 "1. An authority shall constitute a municipal corporation, exercising public and essential governmental functions, and having all the powers necessary or convenient to carry out and effectuate the purposes and provisions of sections 99.010
to 99.230, . . ." (emphasis added)
And, in Section 99.210, the legislature stated:
 "In addition to the powers conferred upon an authority by other provisions of sections 99.010 to 99.230, an authority is empowered to borrow money or accept contributions, grants or other financial assistance from the federal government for or in aid of any housing project within its area of operation, . . . It is the purpose and intent of this chapter to authorize every authority to do any and all things necessary or desirable to secure the financial aid or cooperation of the federal government in the undertaking, construction, maintenance or operation of any housing project by such authority."
(emphasis added)
The legislative intent is clear; a local housing authority may exercise whatever powers are necessary to secure the financial assistance and cooperation of the federal government in obtaining money to finance construction of low income housing. By exempting the interest earned on certain bonds from federal income taxation and thereby making the bonds more attractive to investors, the federal government assists local housing authorities in obtaining mortgage money for the construction of low income housing. In order to obtain the federal assistance described, the requirements of Section 3(6) of the United States Housing Act of 1937 and 24 C.F.R. § 811 must be met. It is our opinion that the power of a housing authority to meet the requirements of a federal regulation which will assist that housing authority in obtaining construction mortgage money is implied in Sections 99.080
and 99.210.
Missouri courts have long recognized the validity of a statutory construction granting implied powers.
 ". . . when a power is given by statute, everything necessary to make it effectual or requisite to attain the end is necessarily implied. . . ." Ex parte Sanford, 139 S.W. 376, 383 (Mo.Banc 1911)
See also, Reilly v. Sugar Creek Tp. of Harrison County, 139 S.W.2d 525
(Mo. 1940), and State ex rel. Brokaw v. Board of Education ofCity of St. Louis, 171 S.W.2d 75 (St.L. Mo.App. 1943).
Further, the use of a not-for-profit corporation as the designated agency or instrumentality of a housing authority ("parent entity") is not an unlawful delegation of the powers of a municipal corporation. First, the powers of the housing authority are not bestowed by a municipality but are derived directly from the state. Therefore, a housing authority is neither an agent of a municipality nor a subordinate branch thereof. City of Paterson v. HousingAuthority of Paterson, 96 N.J.Super. 394, 233 A.2d 98 (1967); Attorney General Opinion No. 205, Vanlandingham, 3-17-70. Once the governing body of a municipality passes a resolution pursuant to Section 99.040.1, which recognizes the need for a housing authority to function in that city, all actions taken by the housing authority thereafter are completed pursuant to the provisions of the Housing Authority Law. Attorney General Opinion No. 205, Vanlandingham, 3-17-70.
Second, assuming that a carte blanche delegation to a not-for-profit corporation by a local housing authority (created as a municipal corporation by the General Assembly) would violate Missouri law, see, Aquamsi Land Co. v. City of Cape Girardeau, 142 S.W.2d 332
(Mo. 1940), the requirements of 24 C.F.R. § 811.105 that the parent entity approve the articles of incorporation and bylaws of the designated entity, approve the project, the project program, and project expenditures, and approve each issue of obligations not more than sixty days prior to the issuance of the obligation by the designated entity are such that the local housing authority has the right of acceptance and/or veto over the designated entity's actions. No broad delegation of powers to a designated entity is permitted under the cited regulation. See, Arkansas-Missouri PowerCorporation v. City of Kennett, 159 S.W.2d 782 (Mo. 1942). Therefore, in our opinion, the financing structure contemplated under the referenced regulation is not an unlawful delegation of authority by a housing authority under Missouri law.
Although no Missouri cases challenging the Housing Authorities Law have been found, the Missouri courts have upheld the validity of the Planned Industrial Expansion Law, State ex rel. Atkinson v.Planned Industrial Expansion Authority of St. Louis, 517 S.W.2d 36
(Mo.Banc 1975), and the Land Clearance for Redevelopment Law, Stateon inf. Dalton v. Land Clearance for Redevelopment Authority ofKansas City, Mo., 270 S.W.2d 44 (Mo.Banc 1954), and Land Clearancefor Redevelopment Authority of City of St. Louis v. City of St.Louis, 270 S.W.2d 58 (Mo.Banc 1954). Despite strenuous constitutional attacks on the constitutionality of these laws, the court has adhered to a philosophy that ". . . The act is to be liberally construed to effectuate its purposes." State ex rel. Atkinson v.Planned Industrial Expansion Authority of St. Louis, supra at 41.
Annbar Associates v. West Side Redevelopment Corporation,397 S.W.2d 635 (Mo.Banc 1965), has particular significance for this opinion. Chapter 353, RSMo 1978, provides for the creation of private urban redevelopment corporations, having a limited power of eminent domain and certain ad valorem tax benefits on property they improve. That legislation survived a constitutional challenge to its provisions granting eminent domain and tax relief to private persons. The court noted that the presence of controls exercised or exercisable by the city of Kansas City over the private corporation would ensure that the public purpose contemplated by Chapter 353 would be met.
We have previously described the complete control a parent entity would have over the designated agency or instrumentality by virtue of the requirements of the federal regulations. We are, therefore, confident that the appellate courts of Missouri would uphold the validity of the financing arrangement you describe.
In light of the foregoing, we feel it unnecessary to express a separate opinion on each question you posed.
CONCLUSION
It is, therefore, the opinion of this office that a public housing authority may act in the capacity of a "parent entity," as that term is defined in 24 C.F.R. § 811.102, and is empowered to designate a not-for-profit corporation as its agency or instrumentality in the issuance of tax exempt obligations, the proceeds of which would be applied to the construction of low income housing subsidized by the United States Department of Housing and Urban Development under the provisions of Section 8 of the United States Housing Act of 1937, as amended.
The foregoing opinion, which I hereby approve, was prepared by my assistant Edward D. Robertson, Jr.
Yours very truly,
 JOHN ASHCROFT Attorney General